1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF CALIFORNIA

3

4    RONALD WAYNE LIPSETT, JR.,               No.  1:14-cv-01403-SKO  HC

5                    Petitioner,              **ORDER DENYING PETITION FOR
                                              WRIT OF HABEAS CORPUS**
6            v.

7    ROBERT W. FOX, Warden, California
     Medical Facility,
8
                     Respondent.
9

10          Petitioner, Ronald Wayne Lipsett, Jr., is a state prisoner proceeding *pro se* with a petition

11   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He alleges two grounds for relief: (1)

12   insufficient evidence existed to prove count three, and (2) count two must be vacated as a lesser-

13   included offense of count one.  Having reviewed the record and applicable law, the Court denies

14   the petition.

15

16   **I.      Factual Background[2]**

17          When David Smith went to bed on September 6, 2010, he left his motorcycle parked

18   outside his bedroom window.  At about 4:00 a.m., Smith awakened to the sound of a truck

19   backing into his driveway.  A man jumped from the passenger seat and ran to Smith's

20   motorcycle.  Realizing the man intended to steal the motorcycle, Smith ran outside and

21   confronted the man, who was dragging Smith's motorcycle to the truck.  Smith and the man "got

22   into a tug of war over the bike," and Smith yelled "Drop the bike" several times.  When Smith's

23   German Shepherd dog came out of the house, the thief began to scream repeatedly, at the top of

24   his lungs, "Shoot him. Shoot him.  Shoot the dog!"

25

26

27   _____

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States
28   Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.
     [2] The factual background is adapted from *People v. Lipsett*, 223 Cal. App. 4th 1060, 1062-63 (2014).

The driver got out of the truck, brandished a small black handgun and aimed it at Smith's stomach. (On cross-examination, Smith acknowledged that the crime occurred in the dark and conceded that what he saw in the driver's hand might not have been a "real" gun.) Frightened, Smith ducked behind his wife's car, which was also parked in the driveway. When Smith saw his wife and infant son standing in the front doorway, however, he ran towards his house, intending to get one of his own guns. Smith asked his wife to call 911.

The two men threw the dirt bike into the back of their truck. By the time Smith returned, the truck was driving away.

After Smith received a tip naming Petitioner as the man who stole the motorcycle, police showed Smith a photographic line-up, including a photograph of Petitioner that was several years old. Smith said that none of the photographs depicted the man that Smith had seen steal his bike. Police then secured a more recent photograph of Petitioner. When the recent picture was included in a second photographic line-up a week later, Smith immediately identified Petitioner as the thief.

A few days after the motorcycle was stolen, a highway patrolman stopped an individual, Fred Esguerra, Jr., riding a motorcycle in Stockton, California, near a flea market known to police as a place where stolen vehicles were sold. Esguerra's motorcycle had no license plates, and its vehicle identification number had been partly obliterated. Esguerra said that he had recently bought the bike for $500 from an unknown individual who did not provide a bill of sale. After identifying Smith as the registered owner from the motorcycle's partial identification number, police returned it to Smith. Smith did not identify Esguerra as having been present when the motorcycle was stolen.

///

///

2

1

**II.     Procedural Background**

An information charged Petitioner with (1) carjacking (Cal. Penal Code § 215(a)); (2)

vehicle theft (Cal. Vehicle Code § 10851(a)); and (3) criminal threats (Cal. Penal Code § 422), as

well as firearm use enhancements on each count (Cal. Penal Code § 12022(a)(1)) and

enhancements based on Petitioner's prior serious or violent felony conviction (Cal. Penal Code

§§ 667 (b)-(i) and 667.5(b)).  Following trial in Tuolumne County Superior Court, a jury

convicted Petitioner on all substantive counts but was unable to reach verdicts on the firearm use

enhancements.  In a judgment dated July 19, 2012, the trial court found the prior felony

conviction allegations true and imposed an aggregate sentence of 23 years.

Petitioner filed a direct appeal to the California Court of Appeal, which affirmed.  *Lipsett*,

223 Cal. App. 4th 1060.  The California Supreme Court summarily denied review.

**III.     Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a

petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United

States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996,

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320,

322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's

provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of

the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5

(1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme

malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can prevail

only if he can show that the state court's adjudication of his claim:

3

1

2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

4

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

6

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

7

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state

8

court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v.*

9

*Richter*, 562 U.S. 86, 98 (2011).

10

As a threshold matter, a federal court must first determine what constitutes "clearly

11

established Federal law, as determined by the Supreme Court of the United States."  *Lockyer*,

12

13

538 U.S. at 71.  To do so, the Court must look to the holdings, as opposed to the dicta, of the

14

Supreme Court's decisions at the time of the relevant state-court decision.  *Id.*  The court must

15

then consider whether the state court's decision was "contrary to, or involved an unreasonable

16

application of, clearly established Federal law."  *Id.* at 72.  The state court need not have cited

17

clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the

18

result of the state court contradicts it.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The federal court

19

20

must apply the presumption that state courts know and follow the law.  *Woodford v. Visciotti*,

21

537 U.S. 19, 24 (2002).  The petitioner has the burden of establishing that the decision of the

22

state court is contrary to, or involved an unreasonable application of, United States Supreme

23

Court precedent.  *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

24

"A federal habeas court may not issue the writ simply because the court concludes in its

25

independent judgment that the relevant state-court decision applied clearly established federal

26

27

law erroneously or incorrectly."  *Lockyer*, 538 U.S. at 75-76.  "A state court's determination that

28

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

4

on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough*

*v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, the AEDPA standard is difficult to satisfy since

even a strong case for relief does not demonstrate that the state court's determination was

unreasonable.  *Richter*, 562 U.S. at 102.

**IV.     Sufficient Evidence Supported Petitioner's Conviction on Count 3**

Petitioner contends that because sufficient evidence did not support his conviction on

count three, which charged that Petitioner made criminal threats contrary to California Penal

Code § 422, the Court must reverse the conviction

**A.     California Penal Code § 422**

California Penal Code § 422(a) sets forth the five elements of the crime of criminal

threats:

> Any person who willfully threatens to commit a crime which will
> result in death or great bodily injury  to another person, with the
> specific intent that the statement, made verbally, in writing, or by
> means of an electronic communication device, is to be taken as a
> threat, even if there is no intent of actually carrying it out, which on
> its face and under the circumstances in which it is made, is so
> unequivocal, unconditional, immediate, and specific as to convey to
> the person threatened a gravity of purpose and an immediate
> prospect of execution of the threat and thereby causes that person
> reasonably to be in sustained fear for his or her safety or for his or
> her immediate family's safety, shall be punished by imprisonment
> in the county jail not to exceed one year, or by imprisonment in the
> state prison.

**B.     State Court Decision**

The California Court of Appeal rejected Petitioner's argument.  *Lipsett*, 223 Cal. App. 4th

at 1064-65. [3] The Court explained that the statutory language requires only that the victim take

the statement as a threat and does not provide an exception for threats against third parties.

*Lipsett*, 223 Cal. App. 4th at 1065.  The Court held:

///

---

[3] Because the California Supreme Court summarily denied review, the Court must "look through" the summary
denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth
Appellate District.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

Defendant contends that he was improperly convicted of making criminal threats because he did not "direct" the alleged threat to the victim, Smith. This contention is true in a limited sense not relevant here. In a purely grammatical sense, defendant's comment was not "directed" to Smith, because it used the third-person pronoun, "him." As we will explain, this fact is irrelevant. "The language of section 422 is sufficiently clear so that 'its plain meaning should be followed.' [Citation.]" (*In re David L.* (1991) 234 Cal. App. 3d 1655, 1658, 286 Cal. Rptr. 398.) Accordingly, our analysis begins and ends with the statutory text.

[T]he true question presented is whether defendant intended his "statement . . . to be taken as a threat" by Smith (§ 422, subd. (a)), not whether the threat was syntactically addressed to him. Here, there is sufficient evidence defendant possessed the requisite intent. Defendant was yelling at the top of his lungs while engaged in a "tug of war" with Smith over the bike he was trying to steal. Smith's German shepherd was nearby. The jury could have reasonably inferred that defendant made the threat intending to scare Smith into retreating with his dog so defendant could steal his bike and escape.

*Lipsett*, 223 Cal. App. 4th at 1065 (footnote omitted).

**C.     Standard for Reviewing Sufficiency of the Evidence**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

**D.     Sufficient Evidence Supported Petitioner's Conviction**

In his federal petition, Petitioner repeats his state-court contention that "Appellant did not threaten to commit a crime against Smith." The state court determined that the jury could have found the elements of the crime of criminal threats contrary to § 422(a) beyond a reasonable doubt.

The facts adduced at trial established that Smith left his home and confronted Petitioner as

6

1    Petitioner was in the process of dragging Smith's motorcycle to Petitioner's pick-up truck with

2    the intent of stealing the motorcycle.  Smith attempted to wrestle the motorcycle away from

3    Petitioner until Petitioner saw Smith's dog and shouted, "Kill him!  Kill him!  Kill the dog!"  At

4    that point, the driver of the pick-up truck got out and moved toward Smith, pointing a gun at

5    Smith's stomach.

6         The driver's act of pointing the gun directly at Smith leaves little doubt that the driver

7    understood the antecedent of the pronoun "him" to be the motorcycle owner who was attempting

8    to thwart the theft of the motorcycle. (Presumably, because neither thief knew Smith's name,

9    neither could refer to him directly.) That the threat frightened Smith was evidenced by his

10   retreating first behind his wife's car, and then to his home.  The jury reasonably determined that

11   Petitioner criminally threatened Smith.

12   **V.        Petitioner's Second Ground for Relief Does Not State a Federal Claim**

13        Petitioner contends that he was improperly convicted of both carjacking (Cal. Penal Code

14   § 215) and the lesser included offense of the unlawful taking of a vehicle (Cal. Vehicle Code §

15   10851).  The state court dispatched this claim in four sentences, relying on state precedent

16   holding that "unlawfully taking a vehicle is not a lesser included offense of carjacking . . . ."

17   *Lipsett*, 223 Cal. App.4th at 1066 (quoting *People v. Montoya*, 33 Cal. 4th 1031, 1035 (2004)).

18   Petitioner did not present, and the state court did not examine, any federal Constitutional claim.

19   Because Petitioner does not articulate any claim rooted in the U.S. Constitution, this Court must

20   defer to the state court's determination of a state question.

21        **A.        Applicable California Law**

22        "'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from

23   his or her person or immediate presence, or from the person or immediate presence of a passenger

24   of the motor vehicle, against his or her will and with the intent to either permanently or

25   temporarily deprive the person in possession of the motor vehicle of his or her possession,

26   accomplished by means of force or fear."  Cal. Penal Code § 215(a).  Carjacking, as prohibited

27   by § 215, neither affects not supersedes the crime of robbery, as prohibited by Cal. Penal Code

28   ///

7

1  § 211.  Cal. Penal Code § 215(c).   A defendant may not be punished under both §§ 211 and 215

2  for the same act, which constitutes a violation of both sections.  Cal. Penal Code § 215(c).

3      California Vehicle Code § 10851 (a) provides:

4
5
6
> Any person who drives or takes a vehicle not his or her own,
> without the consent of the owner thereof, and with intent either to
> permanently or temporarily deprive the owner of his or her title to
> or possession of the vehicle, whether with or without intent to steal
> the vehicle . . . is guilty of a public offense . . . .

7      Although California law permits the conviction of a defendant of any number of offenses

8  charged as a result of a single act (Cal. Penal Code § 954), case law prohibits multiple convictions

9  based on lesser included offenses.  *People v. Ortega*, 19 Cal. 4th 686, 692 (1998).  "'[I]f a crime

10  cannot be committed without necessarily committing a lesser offense, the latter is a lesser

11  included offense within the former.'"  *Montoya*, 33 Cal. 4th at 1034 (quoting *People v. Lopez*, 19

12  Cal. 4th 282, 288 (1998)).  Because a defendant can commit carjacking without committing

13  unlawful taking of a vehicle, unlawful taking is not a lesser included offense of carjacking.

14  *Montoya*, 33 Cal. 4th at 1035.  That is because carjacking is a crime against the possessor or

15  passengers in a vehicle, but unlawful taking of a vehicle is a crime against ownership itself.  *Id.*

16  The *Montoya* court provided an illustrative example:

17
18
19
20
21
> Joe knows his neighbor Mary's car has been stolen and she is
> offering a reward for its return.  If Joe spots an unfamiliar person
> driving Mary's car and orders that person out at gunpoint and then
> drives off, intending to return the car to Mary and secure the
> reward, he would be guilty of carjacking but not of an unlawful
> taking of the vehicle.  Although Joe had the intent to deprive the
> *driver* of possession, as required for carjacking (§ 215), he lacked
> the intent to deprive the *owner* of title or possession, as required for
> unlawful taking of a vehicle (Veh. Code, § 10851).

22      *Montoya*, 33 Cal. 4th at 1035 (footnote omitted).

23      Nor is a defendant denied equal protection under California law if he or she is charged

24  with carjacking, robbery, and vehicle taking when all three offenses arise from the same act.

25  *People v. Antoine*, 48 Cal. App. 4th 489 (1996).

26      **B.**    **No Federal Constitutional Question**

27      The petition does not articulate any federal constitutional claim relating to Petitioner's

28  conviction of both carjacking (Cal. Penal Code § 215) and unlawful taking of a vehicle (Cal.

8

1  Vehicle Code § 10851).  "[F]ederal habeas corpus relief does not lie for errors of state law."

2  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*citations omitted*).  "[E]rrors of state law do not

3  concern us unless they rise to the level of a constitutional violation."  *Oxborrow v. Eikenberry*,

4  877 F.2d 1395, 1400 (9ᵗʰ Cir. 1989) The Antiterrorism and Effective Death Penalty Act

5  ("AEDPA") imposes "a highly deferential standard for evaluating state-court rulings," requiring

6  "that state-court decisions be given the benefit of the doubt."  *Visciotti*, 537 U.S. at 24 (quoting

7  *Lindh*, 521 U.S. at 333 n. 7.  Petitioner may only seek habeas relief if the nature or duration of his

8  imprisonment violates federal constitutional provisions.  Accordingly, the Court does not reach

9  Petitioner's second ground for relief.

10  **VI.**      **Certificate of Appealability**

11      A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a

12  district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v.*

13  *Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a

14  certificate of appealability is 28 U.S.C. § 2253, which provides:

15

16          (a) In a habeas corpus proceeding or a proceeding under section 2255
        before a district judge, the final order shall be subject to review, on appeal, by
        the court of appeals for the circuit in which the proceeding is held.

17

18          (b)  There shall be no right of appeal from a final order in a proceeding
        to test the validity of a warrant to remove to another district or place for
        commitment or trial a person charged with a criminal offense against the

19

20           United States, or to test the validity of such person's detention pending
        removal proceedings.

21

22          (c)    (1) Unless a circuit justice or judge issues a certificate of
        appealability, an appeal may not be taken to the court of appeals from—

23

24              (A)  the final order in a habeas corpus proceeding in which the
        detention complained of arises out of process issued by a State court; or

25

26              (B)  the final order in a proceeding under section 2255.

27              (2)  A certificate of appealability may issue under paragraph (1)
        only if the applicant has made a substantial showing of the denial of a
        constitutional right.

28

1

2              (3)  The certificate of appealability under paragraph (1) shall
        indicate which specific issues or issues satisfy the showing required by
3       paragraph (2).

4          If a court denies a habeas petition, the court may only issue a certificate of appealability

5  "if jurists of reason could disagree with the district court's resolution of his constitutional claims

6  or that jurists could conclude the issues presented are adequate to deserve encouragement to

7  proceed further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

8  Although the petitioner is not required to prove the merits of his case, he must demonstrate
9
   "something more than the absence of frivolity or the existence of mere good faith on his  . . .
10
   part."  *Miller-El*, 537 U.S. at 338.
11

12         Reasonable jurists would not find the Court's determination that Petitioner is not entitled

13 to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented

14 required further adjudication.  Accordingly, the Court declines to issue a certificate of

15 appealability.

16
   **VII.    Conclusion and Order**
17
18         The Court hereby DENIES the petition for writ of habeas corpus pursuant to 28 U.S.C. §

19 2254.  The Court DECLINES to issue a certificate of appealability.  The Clerk of Court is

20 directed to enter judgment for the Respondent.

21

22 IT IS SO ORDERED.

23
   Dated:    **November 21, 2016**                    /s/ *Sheila K. Oberto*
24                                              UNITED STATES MAGISTRATE JUDGE

25

26

27

28
                                            10